325-0232 Susan Epich, Individually and as Independent Administrator of the Estate of Alan Epich, Appellant, v. Silver Cross Hospital and Medical Centers and Blanca Herrera, M.D., Appellees. Mr. Ravelli, if you're ready, you may proceed. Thank you, Your Honor. May it please the Court, my name is Dave Ravelli and I represent the plaintiff's appellant. This case arises from the death of a 63-year-old Alan Epich who arrived at Silver Cross Hospital in November of 2017 in septic shock. He died five hours later after antibiotics were delayed for more than four hours. Plaintiffs sued the emergency room doctor, Dr. Herrera, and the hospital Silver Cross. Silver Cross was eventually dismissed from the case through summary judgment and the jury verdict was returned in favor of the defense, Dr. Herrera. There are primarily three issues before the Court. First, the Court wrongly denied plaintiff's motion to amend her complaint against Silver Cross. Second, the Court erroneously granted summary judgment in favor of Silver Cross. Third, the Court, through its rulings on defendant's expert disclosures, denied plaintiff a fair trial. If I could start with the first issue, the trial court abused its discretion when it denied plaintiff leave to amend to add a single institutional negligence count against Silver Cross Hospital. Illinois law favors liberal amendment of pleadings before final judgment, so that cases are decided on their merits, not on technical pleading limitations. Under the Loyola Academy case, the four factors are, first, whether the proposed amendment cures a defective pleading. Second, whether the amendment were prejudiced or surprised the opposing party. Third, whether it was timely. Fourth, whether previous opportunities to men identified. But the central question is not mechanical box checking. Those factors are guidelines. Can I ask you about this? Are we talking about leave to amend to conform with the proofs or would this have required that discovery be reopened? So, Your Honor, I believe you asked me whether it was leave to amend while discovery, were we asking whether discovery needs to be reopened? Would discovery have had to be reopened if you were allowed to amend? Um, I don't, it was during discovery. So, it was prior, it was prior to the close of discovery, we had just taken a 20681. So, maybe I wasn't clear, would certain depositions have to be retaken? Um, I don't think they would have had to be retaken. It's possible that another party may have been needed to be called from Silver Cross, but that would be dependent on whether or not they'd want to have a 20681 representative, uh, in addition to the pharmacist. Uh, just to continue, uh, the central question is not mechanical box checking. Those factors are guidelines for the court's liberal exercise of discretion. The central question is whether allowing the amendment would further the ends of justice. Here it would. Uh, going through the factors briefly on the first factor, the case is controlled, uh, the first factor would not be uh, they're plainly applicable if it, if it, uh, doesn't apply. So, in other words here, we, if we're not carrying an amended pleading or we're not carrying a defect, uh, the court there says that it would not apply. So, we move to the second factor, which is, uh, prejudice. And that's really the primary important one here. Um, Silver Cross cannot show prejudice here. From the beginning, this case has been about the failure to timely administer life-saving antibiotics. The proposed amendment did not change the patient, the admission, the date, the injury, the antibiotics, or the delay. It simply added a direct institutional negligence theory based on the same antibiotic management facts that had always been central to the case. Looking at the case Steinberg, a defendant is not prejudiced by amendment when its attention has already been directed to the facts forming the basis of the new claim. And that is exactly what happened here. Silver Cross's attention had long been directed to antibiotic ordering, storage, delivery, dispensing, and administration. At the time leave was sought, Silver Cross had not disclosed any defense expert report. There'd been no motion for summary judgment, uh, and there, there had been no experts disclosed. So, this is not a case where the hospital was forced to defend a brand new theory on the courthouse steps. It's a case where the hospital's own corporate representative revealed the factual basis for the amendment while discovery was still ongoing. The timing matters, and that's the third element. Plaintiff first served the 2068 deposition back in October of 2022. And they asked, we asked Silver Cross to produce a representative of the hospital's procedures for storing, ordering, delivering, dispensing antibiotics. Prior to that time and after that time, there were document requests, supplemental document requests, asking for all records related to the care and treatment of Alan Eppage. Silver Cross finally produced a pharmacist on April 30th, 2024, after two years of delaying. And that deposition, that deposition changed the factual landscape. Before Butler's testimony, the, uh, testing, uh, the, the antibiotics needed to save, the testimony indicated that the antibiotics, uh, to save Alan Eppage's life were in the pharmacy. They were about an hour away, up to an hour away. But what Mr. Butler's testimony revealed was that, no, they were in a, in a, in a PICSIS, uh, cart right in the emergency room. His testimony indicated that there was antibiotics right there that could have been grabbed immediately upon ordering. This critical information was not merely, uh, it wasn't just that there were no policies, uh, but rather the critical information was that the life-saving antibiotics were accessible right there, and they could have saved him. Silver Cross cannot claim prejudice from an amendment triggered by facts, its own representative disclosed, and by records, its own system failed to preserve. And those records relate to the printouts of the PICSIS machine. Uh, we had asked for document requests three, two or three times, and those, uh, we were told that there were no records, uh, and, and then after this deposition, he revealed that there were indeed records, but that those records were not retained, uh, five years after the, uh, the applicable date, applicable date, which in other words, they were not preserved. And those records would have indicated what was in the PICSIS, how much was in the PICSIS, whether, uh, drugs were taken out of the PICSIS at that time. Uh, Silver Cross relies on a series, a trio of cases. I won't go through all of them, but mainly those cases are dealing with completely new claims and new facts. For example, in, uh, that's not the case here. This is a, we sought to add claims four months well before a trial, uh, began. Uh, same with Geisler and different, that's different because the plaintiff there sought leave during cross motion for summary judgment. Here, Butler's testimony with genuinely new information obtained from Silver Cross from their own 20681 representative. Finally, the, the last factor is, is timeliness. Uh, the code, the code permits amendments before final judgment. I'm sorry, there are two more factors. Uh, the next factor is timeliness. The code permits amendments before final judgment on just and reasonable terms. Illinois courts have repeatedly emphasized the liberal amendments so the litigants may fully present their claims. In Loyola Academy, the Supreme Court reversed denial of leave, even though summary judgment had already been granted. The court found no prejudice because the parties had notice of plaintiff's intent to amend, and the case was still in the pleading stage. In De La Rosa, the appellate court held that denying amendment two weeks before trial was an abuse of discretion where the defendant knew all on the facts underlying the proposed claim. The principle applies here because Silver Cross knew antibiotic ordering was part of the claim and availability and administration. Here, there's, there's also several examples of where amendments were done the day before trial, during trial. Uh, Miller was during trial. The case Lee was shortly before closing argument. Here, we're four months in advance, far different. The final factor, prior opportunities to amend. Silver Cross says plaintiffs should have amended earlier when they learned in 2021 that the hospital had no sepsis or antibiotic protocols, but that argument ignores causation. The policy gap alone was not enough to amend the complaint. Before Butler's deposition, plaintiff was operating under the understanding that the needed antibiotics were not available in the emergency room and had to be delivered, but after his deposition, testimony changed because it showed that antibiotics were likely available or ready accessible. This was plaintiff's first amendment since discovery began. It's also worth noting, and I should say substantive amendment. There was one that was done early on to fix several misnomers. Hoover confirms that even prior amendments do not bar leave where the new theory is tied to the same factual matrix and opposing party is not prejudice. Finally, there's a procedural point. The trial court's March 4th, 2021 order expressly contemplate that plaintiff could seek leave to expand her direct liability claims against Silver Cross. That is exactly what plaintiff did. Moving on to the next issue, the trial court erred in granting summary judgment on apparent agency. The second issue is ruled de novo. Under Gilbert, apparent agency in the hospital context requires three showings. First, that the hospital or its agent acted in a manner that would lead a reasonable person to conclude that the physician was an agent or employee. Second, that the agent's acts create the appearance of authority the hospital knew of or acquiesced in those acts. And third, the plaintiff relied on the hospital or its agent consistent with ordinary care and prudence. Here, there was enough evidence to survive summary judgment. As the record affirmatively supports, the plaintiff here did not sign a consent form. In fact, there was evidence that the consent form has a critical notation which says plaintiff couldn't sign due to medical condition. Mr. Evich never signed it. His wife, who arrived at the ER with him, also was never informed or told about it. He arrived in septic shock, anxious, confused. He did not choose Silver Cross because he wanted Dr. Herrera or any other particular independent contractor physician. He was brought by ambulance. He was seeking help at Silver Cross. The recent decision in Martin v. Lehman reinforces the point that the Fourth District reversed summary judgment where confusion about physician employment and the patient's condition create a genuine factual dispute. The court there made the inquiry straightforward. Did the patient seek care from the hospital itself or did the patient go there specifically for a particular physician? Here, the answer is clear. Mr. Evich sought care from Silver Cross. Silver Cross has cited several cases and they do not compel different results. Mr. Evich signed nothing, unlike the cases that they cite. He could not sign at all. Here, every element is at least genuinely disputed. Mr. Evich was in septic shock and neither had in the meaningful sense. Here, the trial court did not identify an absence of evidence. It weighed disputed evidence. It created the sign over the patient's condition, the unsigned consent form, the badge, and a few other things to grant summary judgment. This is a fact-finding issue. It was a parent agency claim and should have gone to the jury. The final issue is whether the trial court erred in permitting Dr. Semel's undisclosed expert testimony. Dr. Semel was the expert for Dr. Herrera during trial. 213F3 is mandatory and requires strict compliance. The Supreme Court made clear in Sullivan v. Edward, a controlled expert disclosure must drop down to specifics. The purpose of the rule is to prevent surprise gamesmanship in trial by ambush. Dr. Semel's disclosure did not do that. It gave three bare conclusions, that the delay did not cause death, that Mr. Evich's delay in seeking treatment contributed to the outcome, and that the source of infection was the leg. The stated basis was generic, education, experience, training, and literature reviewed. That is the very placeholder that Sullivan forbids. A party cannot satisfy 213 by announcing a bottom-line causation conclusion and leaving the factual and scientific theory for trial. That's what happened here. Dr. Semel went far beyond his disclosures. He testified about multi-organ failure, he testified about liver dysfunction, he testified about other lab values, and what he also did was he went directly to central issue in the case, whether the four-hour delay in antibiotics made a difference. Plaintiff did not have to prove timely antibiotics would have guaranteed survival. Plaintiff had to show that the delay lessened the effectiveness of treatment under the loss of chance doctrine. Dr. Semel's underscored percentages and lab-based testimony was designed to defuse that precise point. The prejudice in this situation was substantial, causation was the central disputed issue. Dr. Semel's lab-based and percentage of survival testimony became the linchpin of the defense. It shifted the jury's focus away from the legally relevant question, whether the delay reduced Mr. Eppich's chance of survival and toward an undisclosed theory that he was too sick to survive regardless. With that, I will reserve the rest of my time for rebuttal. Thank you. All right. Any additional questions from Justice Anderson or Justice Peterson? I do not. No. All right. Thank you, Mr. Revelli. You will have an opportunity in reply. Mr. Sladen. Yes, thank you. May it please the court. I was looking at the appellate briefing. There were a couple of issues that he did not now just discuss but I would like to discuss. One of the issues that were brought up was the plaintiff has claimed that he had filed a motion to compel that was not granted and that somehow that was an abuse of discretion by the court. Just for a little bit of background, the standard of review, obviously, when it comes to discovery orders is an abuse of discretion. So this is to be reviewed as an abuse of discretion. In January of 2024, the court of Will County set this case for trial on October 21st of 2024. On April 16th, an expert discovery schedule was set with no objection and the plaintiff was disclosed by May 21st of 2024. On June 14th of 2024, the plaintiff filed a motion to file their second amended complaint. There was motion practice on that motion. The judge or the court, the Will County Sheriff's Court, entered an order suspending the April 16th, 2024 discovery schedule, expert discovery schedule. That stayed suspended until August the 30th of 2024. The court ordered that the defendants had to disclose their experts by October the 9th of 2024. That would have been 12 days before trial. At that point, the plaintiff did not object. On October 2nd, the plaintiff's motion that they had filed was heard by a third court and the plaintiff requested at that point that the defendants be forced to identify their experts just by name, but not the complete disclosure. The court at that point denied that motion and said no, the disclosure will remain October 9th of 2024. Defendants disclosed their experts on October 9th of 2024. On October 10th, the defendants asked plaintiffs, do you want to take their depositions? We need to get some dates for our experts' depositions and we were told at that point that, and this is in the record, at that point that they had chosen not to take our experts' depositions. At no time prior to October 9th of 2024 did the plaintiff file a motion with the Sheriff's Court of Will County seeking relief from any of those orders. They didn't ask for a continuance of the trial. They didn't ask for the trial date to be changed in any way for any other and we were just going forward with these orders. At this point, I don't think that that can be an abuse of discretion. Discovery orders in the circuit court won't be disturbed unless there's an abuse of discretion and that's Velarde versus Illinois Central Railroad and the circuit court's discretionary powers regarding pretrial discoveries are extremely broad and that's the Hayward versus Robinson case that's cited in our brief. At this point, I do not believe that there's an abuse of discretion or that that argument is well-founded. As to Dr. Simmel, the defendants actually disclosed on October 9th to experts, an expert on liability and an expert on approximate cause. Dr. Simmel is an infectious disease physician. The 213 disclosure that was filed and can be found on page C2890 volume 2 of the record disclosed Dr. Simmel's opinions and the basis of those opinions. They weren't boilerplate. Dr. Simmel testified as to liver issues that the patients on arrival to the emergency room, the patient had liver issues, kidney failure. It was disclosed that he would testify as to the plaintiff's condition on arrival, would testify as to the use of antibiotics for a patient in septic shock and specifically that he would testify that whether or not the patient was given antibiotics in the emergency room. I think the exact disclosure is that it's Dr. Simmel's opinion that given the delay, which she does not believe there actually was a delay, but if there was a delay in giving antibiotics, it made no difference in the plaintiff's chance of survival. In other words, that the defendants were not to call, anything the defendants did was not the cause or contribute, was not a cause, did not contribute to or did not cause the death of Mr. Repic. That disclosure is satisfactory. The plaintiff relies on Sullivan, but the Sullivan case basically, the Sullivan case holds that the reason for a 213 disclosure is that there's no surprise that the defendants disclosed the basis of the opinion, which he said was his education experience, his review of labs, those were all in the disclosure, as well as what he will testify to. He did not testify at all, anywhere away from what he was disclosed as. That was a motion in limine number 25 that the plaintiff filed to bar completely Dr. Simmel from testifying because they said the disclosure was not appropriate and was not broad enough. That motion was denied. The court reviews that denial, again, as an abuse of discretion, that is the standard, and it's our position that given the cases that we cite, that that was not an abuse of discretion, that the disclosure was appropriate, it was broad enough, and that it met all of the standards of Supreme Court Rule 213 F3, as well as the Sullivan case and its progeny. As for Dr. Simmel's testimony as to life expectancy, the plaintiff filed motion in limine number 20. Their motion in limine number 20 asked that Dr. Simmel be barred from testifying that even if the plaintiff received antibiotics on admission to the hospital, and I have to explain this a little bit, their ER experts indicated that the standard of care required Dr. Herrera to administer antibiotics within two minutes of the time the patient got to the ER. That was his testimony. We then, Dr. Simmel then testified that if the patient had received those antibiotics within two minutes, he would not have survived. He did testify that on arrival that his septic shock was in such a state with multi-organ failure that he had a less than 5% chance of survival, and that was his chance of survival whether he got antibiotics or not. So he testified to approximate cause that nothing that Dr. Herrera did caused or contributed to the death. The plaintiff, if I can just finish quickly, the plaintiff also did not make any contemporaneous objection to that testimony at trial, and therefore those objections are waived. I think I have the red light. You do have. I'm sorry. No, thank you, Mr. Slayton. Mr. Holbrook. Actually before that, and I apologize, Justice Peterson or Justice Anderson, any follow-up questions? No. I do not. All right. Thank you. Thank you. Mr. Holbrook. Yeah, thank you. May it please the court, my name is Shannon Holbrook. I represent Silver Cross Hospital in this case. First and foremost, given the time frame that we have to discuss this, I would ask the court to carefully review the timeline that we set out in our response. It's a very detailed and lengthy timeline regarding issues in this case with citations to the record. I did want to make sure the court is clear on a couple of statements stated by appellant's counsel. There were two points that really drew my attention. One, the point was made that at the time the plaintiff sought to amend the complaint to add a new novel theory against Silver Cross Hospital, that discovery was still open. Fact discovery had been closed. All F1 discovery had been closed and all F2 discovery had been closed. As Mr. Slayton alluded to, an expert discovery schedule had been put in place requiring a plaintiff to disclose right around the time that he amended. In fact, the first notice that the Silver Cross Hospital ever received of a potential claim against it directly was in the disclosure of the plaintiff's experts. Plaintiff then, after an objection by Silver Cross Hospital, moved to amend the complaint. Plaintiff never sought, prior to disclosure of his experts, brought any motion to allege a new novel claim against Silver Cross Hospital. Now, it should be noted, and the timeline will evidence this, this was approximately four and a half years after the lawsuit had been filed. For four and a half years, the only claim against Silver Cross Hospital was that based on alleged agency claim as to what was then the three defendant doctors. Two of those doctors were ultimately voluntarily dismissed, and the claim became one of vicarious liability against Silver Cross only for the alleged agency of Dr. Herrera. That's the way the case stood in 2024 at the time of the sought amendment, and the vicarious claim is the only claim that was ever asserted against Silver Cross Hospital for more than four and a half years of litigation. Can I ask this question? Sure. You had alluded, I think, to this. So, are you saying that if this new theory is now on the table that you would have had to go get more expert on top of the fact discovery being reopened, you would also have to get new experts on top of that? I'll get to that. Yes, I'll address that now, Judge. Okay. So, at the time of expert disclosure, the pending deadline, at that point, Silver Cross Hospital was only in the case for alleged vicarious liability for Dr. Herrera. I had disclosed and intended to rely only on Dr. Herrera's disclosed experts, since I was her alleged principal, or my client was her alleged principal. Part of the prejudice that would have been a great prejudice of Silver Cross Hospital was that due to the delay in plaintiff seeking to allege a claim directly against Silver Cross Hospital for institutional negligence, I never had a cause to obtain experts on my own. I was relying solely on my alleged agent's experts, as frequently occurs. At the point the plaintiff sought to disclose a new theory against the hospital, we were, I think, at three or four months away from trial in the midst of completing expert discovery. At that point, I had no experts for Silver Cross Hospital. I had not interviewed or disclosed any witness who could talk about policies, which was the basis for this new claim that the hospital did not have certain sepsis policies. I had developed no fact-proof at all during the course of discovery, because that issue had never been raised as to Silver Cross Hospital. I had never sought to obtain an expert or disclose an expert. And most importantly, or perhaps most importantly, to address the comment made by appellant's counsel that no new depositions would have been taken. That is patently untrue. At that point, all of the doctor depositions had been completed. I asked no questions of any of those doctors whether or not a policy, if it had been in existence, would have changed any of the way they treated this patient, if it would have had any causal impact on the patient's outcome, and whether or not that would have had any impact whatsoever on its current treatment. I was foreclosed, due to the lateness of this sought amendment, from asking any of those evidence prior to an imminent trial date, while I'm in the midst of also going through expert discovery, to developing any of that proof. That creates a major surprise and major prejudice on Silver Cross Hospital to be able to defend itself. This concept that, well, Silver Cross Hospital had knowledge of facts that may be relevant to the sought amendment, which regarded only whether or not we had policies, that's a red herring and a misstatement of the way the court should look at this. Yes, the case all along was about alleged failure to timely treat sepsis. That was the claim against the doctor defendants. At no time was there any claim, and no questions asked, or even points to a potential claim, at any of these depositions, of any duty by the hospital to have such policies, or any failure of that duty to have the policies. The first time this was ever alluded to was when the expert disclosure plaintiff was made in May or June of 2024, just months before trial. That creates an insurmountable burden on the hospital to then kind of scramble at the last minute to go find experts, when four and a half years of litigation had passed. Keep in mind, with the timeline that we set forth, we had disclosed, Silver Cross Hospital had disclosed, that it only had one policy regarding sepsis. That disclosure had been made as early as March of 2021. So, a good three plus years before the sought amendment, plaintiff was aware that we only had one policy that did not state what his expert ultimately said we should have had. So, we would ask the court to look at that timeline and the arguments we made with that. We did not withhold any discovery. There was no motion to compel. Plaintiff could have done that. The allusion to the fact that somehow we did not preserve evidence, that is false. It was not timely requested within the record-keeping timeframe that the hospital had. And judge, just because I see my time is waning, as far as the agency claim goes, because the jury had found Dr. Herrera was not at fault and rendered a verdict and there was a judgment entered in her favor. The whole issue of whether or not Silver Cross Hospital could or should have been liable for Dr. Herrera based on a claim of agency is now moot. We would ask the court in adopting Mr. Slayton's arguments to uphold the verdict for Dr. Herrera and as a result, affirm the decision regarding the agency claim against Silver Cross Hospital or alternatively find it to be moot and not to be addressed in the appellate opinion. Thank you, Your Honor. Any additional questions? I don't. No. All right. Mr. Ravelli, you get the last word. Thanks. I'll be very brief. F-1 discovery was closed. Looking at the record here, I misspoke. Expert discovery was due to the same. Expert discovery was still open. I think the only point I would say is that we made requests early on as far back as 2020-2021 for all records related to this. And if you look at the deposition transcript of Mr. Butler, he stated that those records were to be preserved for five years. Had we been able to receive the printouts, like we requested all documents, had we received those, we certainly would have amended sooner. But by the time we got to the time of the 2006-2001 deposition, that's all the time that we had. So with that, I will close my statement. Thank you. Very well. The court thanks both sides for their arguments. We will take the matter under advisement and issue a decision in due course.